Good morning. Yes, good morning, Your Honors. Gene Stonebarger for Plaintiff and Appellant. I'd like to attempt to reserve approximately four minutes for rebuttal. It's truly an honor to be here before this court today to address the importance of the California Civil Code section 174708 of the Song-Beverly Credit Card Act as a robust consumer protection statute. Well, we hope you feel that way after oral argument. The statute is more important now than ever. It was designed to prevent against risk of harassment, credit card fraud, and identity theft by cashiers and by others that gain access to information that's collected by retailers. Retailers have reported more data breaches than any other industry over the past two years. The advances in technology allowing identity thieves and fraudsters to access the databases is increasing. And these important protections have been found by the California Supreme Court to be the fact is a robust consumer protection statute. It must be broadly and liberally construed to effectuate its purposes. The conduct of Devonley here in obtaining information, personal identification information from cardholders at the point of sale after the cashier knows that this is in fact a credit card customer is exactly what the legislature attempted to prevent. And upon, what do you base that counsel? I've read the Supreme Court's cases. I've read the court of appeal cases. Nobody seems to have dealt with this exact situation. It's very clear that you cannot condition the use of a credit card on giving the PPI. That's clear. What is not clear is what happens if the information is requested after, and not as a condition precedent to the use of a credit card. And you've got require, comma, request in connection with. Under normal statutory construction, what you're advocating is not what you would get, and the courts of appeal seem to agree with that. So what are we to do with this? Your Honor, I think just the opposite is true, frankly. The legislature in 1990 enacted the statute that prohibited requiring information as a condition to credit card transaction. The Supreme Court in Panetta interpreted and set forth the effect of the 1991 amendment, and it followed Flores. In Flores, the question presented was the effect of the 1991 amendment. And the defendant made the argument there that the phrase, as a condition to modify the word request, the defendant, which was rejected by the Flores Court. The defendant in Flores also argued the timing of the request was such that a consumer would not receive the request as a condition, and the court of appeal rejected that. What the Flores Court stated, and this was specifically articulated by the Supreme Court in Panetta, was that, in effect, the 1991 amendment prevents a retailer from making an in-run around the statute by claiming that the information was provided voluntarily and only for marketing purposes. Here, that's exactly what Devonley has attempted to do, arguing, trying to make an in-run around the law, claiming that the information was collected for marketing purposes and then was provided voluntarily. The legislature intended to prohibit this conduct because it exposed the consumers to risk of harassment by the store clerks. Do you have any evidence from the historical record that we can rely upon, or from a court opinion, that says just that? Yes. Clearly, there's evidence from the statute itself and the Supreme Court's opinion that says that if somebody comes in and says, here, I want to use this credit card, and the retail merchant or whomever says, well, before we do that, let me have this information about you. You can't do that. That's very clear. The Supreme Court made that absolutely clear. Can you cite any case from the Supreme Court or a court of appeal that deals with this situation, where the credit card transaction has been completed, and then they say, would you mind giving me your zip code? Where's the case that says that that's covered? What the defendant is trying to do here is to dance in the head of a pin, saying the transaction's completed. That's not what I asked you, counsel. My question is, what is the case that deals with the factual situation that I just mentioned? Both Panetta and Flores deal with the interpretation of language showing that the request from a cardholder is the violation. A credit card transaction is the duration of the time period where that individual's standing at the point of sale. So, for example, are you saying that if somebody holds a card, let's say you hold a card from Target, and you're not even at the cash register, and you are wandering along, and somebody says, hey, we're having a special here, and we've got some people that are interested in showing you their special brand of toothpaste, but you've got to give me your credit card. You're saying that's a violation of the law because they hold a credit card. It has nothing to do with the credit card transaction. It's just, since they hold a credit card, you can't ask for any information. Is that your position? No, that's not my position, Your Honor. My position is the credit card paying customer, and both Panetta and Flores state this, that the clear violation is a request for the information from the cardholder in conjunction with the credit card transaction. Okay, but is that the language in conjunction with? Flores states that the 1991 amendment made clear that the request in conjunction with the credit card transaction is the violation. The language of the statute states that any person or corporation that accepts credit cards for the transaction of business may not request, or require as a condition to the credit card transaction, that the individual. And therein lies the rub, is that where the commas are placed suggests that it's the second part that's tied to the use of the credit card. Is it not? I mean, under normal statutory construction? Well, I think under normal statutory construction, Your Honor, the statute's very clear that it says that no person or corporation that accepts credit cards for the transaction of business shall do any of the following. So you're saying that there's case law that says that if you request something, that that is tied to, as a condition, to accepting the credit card payment? I thought that the Court of Appeals case said just the opposite. The Court of Appeals cases say clearly that the requesting and recording of the information without more is a violation of the statute. The Supreme Court in Panetta- Regardless of whether a credit card's involved at all. No, no, a credit card must be involved. This is an information request from the cardholder. Okay, but hear me out, counsel, that what I'm trying to understand from you is the following. If you look at the section 1747.08a, it says that the businesses can't accept credit cards, shall not, in quotes, request, comma, or require as a condition to accepting the credit card as a payment in full, or in part for goods or services, comma, the cardholder to provide personal identification information. So under normal construction, after the first comma, you then go to the next information past the second comma, which has nothing to do with a credit card. Now, you're not the first person to say, well, the legislature should have been more careful. We have a few cases before the US Supreme Court right now that deal with draftsmanship or draftpersonship. But the reality is, that's what we're stuck with right now. And I don't find in the history, and I don't find in the Court of Appeals decisions or the State Supreme Court decisions, anything that says definitively that a request after a credit card transaction has been completed is covered by this section. What am I missing? Well, I think what you're missing there, Your Honor, is you're narrowly constraining the statute to state that the credit card transaction ends when the card is approved. The credit card transaction takes place, and the purchase transaction is with this consumer at the point of sale. The cashier that just received the credit card processed the credit card. When does it end, when they have the bag of goodies, and they go out the door? When they've taken their goods, and they've left the point of sale. Well, let me ask you that, because you're talking to an expert shopper here, okay? That's the, I challenge anyone to. So, let me give you the hypothetical. Okay, let's say I'm out on one of my shopping things, which happen frequently in Sacramento. And so, I buy something, but there's so much great stuff in Sacramento that I really want to be in the, you know, Bloomy's, Neiman Marcus, I want to be in their specials, you know, and I want to get emails on that. I've already purchased what, and then I say, well, you know, yeah, can you put me, you know, put me in your computer and send me, you know, if you've got any coupons or any specials or when you're advertising stuff. So, what you're saying is, even if I've already purchased it, I need to get the credit card back in my purse. I've got to walk away and then come back and say, can I be in your computer? Your Honor, there's various methods. Doesn't that reach absurd results? No. I mean, there are many people that want to get the benefit of these, and it happens after you've already purchased something. Your Honor, there's many ways where one could sign up to receive, to be on a marketing list and receive contact from a retailer if they wanted to. There could be a self-check, a kiosk separate where an individual could sign up to be part of the list. Even if they're a credit card holder? In that situation, yeah, if it's away from the point of sale and the cashier does not have all of this information at their fingertips, i.e., a credit card number, the personal identification information, all the information- So, what you're saying is that, I think you have a decent textual argument. But that being said, I'm showing you where, isn't this absurd? I mean, how could they mean that? So, you are in fact saying that it has to be completely done, you've got to walk away from them and re-initiate. Yes, because the legislature is found, and you can go online and sign up as well. The legislature is found that having personal identification information from a card holder with the credit card information all given to a cashier, all stored in a database, all in this situation with Devonlay can be accessed by any of the store employees. Okay? In fact, in this scenario, Devonlay specifically says, this is at 166 of the record, of the excerpts of record. They specifically state that if a customer does not want to be included into their system, well, you still must ask for the name, if it's a credit card transaction, if it's anything other than cash, and it's also helpful to have the zip code, okay? So, even when somebody says, I don't want to be in your system, the cashiers are still encouraged to get the name and also ask for the zip code. This is in Devonlay's policies. Devonlay's policies acknowledges the illegality of the requesting information at the point of sale, but yet they still instruct their cashiers to attempt to get information. Okay, I think we know your argument. You're under three minutes, so you might want to reserve the balance of your time. Okay, thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Matthew Orr on behalf of Appellee Devonlay Retail Group, Inc. I just want to make a couple of points, and I think it's important to understand something as we discuss the statute here today. The Song-Beverly Credit Card Act, Section 17.47.08, is a credit card statute. You know, it's not a general privacy statute. It's not a general consumer privacy statute. It's specifically triggered only upon the transaction of a credit card transaction. So that should give us some ideas to what the statute is and what the statute isn't. It's not a general prohibition upon the free exchange and mutual exchange of information between a retailer and their clientele. The fact that the statute is a retail credit card statute should give us some insight on some of these issues. Counsel, can I ask you this? Is the main thing that legislature is trying to guard against is having a retailer, like your client, be able to link the credit card number with personal identifying information? No, I don't think that's the case. I think what the purpose of the legislation, and if you go through the legislative history, this becomes clear. The purpose of the legislation was to put credit card holders on the same grounds as cash transaction and non-credit card transactions. So what was happening is retailers were demanding, requiring information from credit card holders. We need your zip code or your, probably not email back then, but social security number, whatever personal identification information it might have been. And the credit card customers mistakenly believing that it was required in order to complete the transaction would give that information. So the statute basically, again, initially as it was enacted, prohibited the requirement of a retailer requiring that information as a condition to complete in the credit card transaction. So basically wanted to put cash and credit card customers on the same level, treat them equally. But the reason why you would not want to allow retailers to demand or require the providing of that information is because it would then be linked to the credit card number and that would enable people to commit fraud, right? Obviously, you don't have that danger when someone pays by cash. Well, that may be the case. That may be part of the reason. But I think the primary reason was to put them on equal grounds. If the legislature wanted to create a robust consumer protection statute, they would have included cash transactions, debit card transactions, and check transactions. The legislative history is clear. As the statute was initially enacted, under the committee notes, as well as the assembly on finance, there's a specific clause in legislative history that talks about nothing prevents a retailer from obtaining information from a credit card holder if that information is obtained voluntarily. So under the statute as enacted, the legislative history specifically contemplates that despite the use of a credit card, you can get a marketing list. This is not an anti-marketing statute. What would you refer us in the legislative history? We're in the administrative or in the record. Could we look to get what you just said? Well, we submitted a supplemental list of authority, and in that supplemental list of authority is some of the legislative history that is identified. I believe it was the background summary of the original statute. What's the ER or SER? I don't know that it was part of the record. I think that we submitted it as supplemental authority after the briefing. It was submitted maybe as recently as maybe three or four weeks ago. What's your best plain language argument? I think the appellants have a decent plain language argument, and we only get into, I mean, arguably, we only get into the legislative history if there's an ambiguity. Well, I think the plain language argument- So you have to get into, do you need to get into ambiguity to win here? No, I mean, the plain language argument that the appellant has cited has been directly addressed in the Absher case as well as the TJX case. Those two cases dealt with return transactions, and they squarely addressed the issue of the placement of that comma. And I think it was Absher court that said, well, the placement of that comma may not be punctilious, may not be the clearest statute in the world, but like you, Judge Callahan, they recognized that a strict hyper-technical reading of the statute would render and lead to absurd results. So those two cases clearly state that the equivalent of the statute should be read as a request or a requirement comma as a condition to accepting the credit card to complete the credit card transaction. Those two cases dispense with the notion that the hyper-technical reading governs here. Let me ask you this. If, arguendo. Sure. Both you and your opponent are mistaken to the degree that there is no clear answer here. This is an ambiguous statute. In this circumstance, we've got two choices. As a court of appeal, federal court of appeals, we can act based upon what we think the state supreme court of California would do in this circumstance, relying in part on court of appeal decisions, certainly on what the Supreme Court has said, or we can certify the question to the California Supreme Court to get a definitive answer from California courts about California law. From your perspective, and I'll ask your opponent on rebuttal, if we reach the conclusion that there is sufficient ambiguity here that neither one of you has a compelling argument without our having to perform the role of construing California law ab initio, would you rather have us certify the question to the California Supreme Court, or would you like us to construe it based upon well-known principles that I just discussed? Your Honor, I think it's entirely appropriate for this panel to rule on and adjudicate this issue. I think that there is clear case law, certainly in numerous district court cases, that have all uniformly applied. What's your best appellate case, would you say? I think that Flores v. Lindens and things, if you're talking about state court appellate cases. In terms of the statutory — There is no Supreme Court, Cal Supremes, right? No. I mean, there's — In terms of the appellate cases you're relying on, do you know whether there were petitions for review and whether they were denied or what happened? No, I don't think there's anything. And I agree, there's probably nothing directly on point. I think that both parties have kind of parsed certain of the language. And the question is, again, I think that Flores v. Lindens and things is clear in that what you have to do when you're faced with a situation of a request as a condition to accepting the credit card, the completion of the credit card transaction, is use an objective standard. What would a reasonable consumer perceive? And I think appellant himself and herself have kind of conceded that in that they say, well, you've got to move to a kiosk. Well, I think that's part of the objective standard. I think that generally, if you look at an objective standard, that dovetails with Flores and with all of the district court, lower court, district court cases. Is there anything either in case law or in the legislative history that would give any doesn't end when the card has been approved? Is there anything that says you've got to take the groceries out of the car first, or you've got to go to the bathroom first, or you've got to spin around three times and go to a kiosk or whatever else to create a barrier or a safety zone? Anything like that in the case law or in the legislative history? Nothing, Judge Smith. And that's, again, I think what the appellant is doing is basically applying an objective standard and what the reasonable consumer would perceive. Now, certainly a kiosk and walking away from the transaction is not going to work in a lot of situations. It may work in a Nordstrom's or something like that, but what about a food truck that accepts credit cards for business? It's kind of hard for the one cook that's in there to get out, put on a different hat, and say, I'm your loyalty rewards member, and I'm making that kind of example somewhat lightheartedly, but certainly small businesses are not going to be able to comply with this type of a standard. Again, when there's the objective standard is that if a reasonable consumer, and this is straight out of Flores versus Lennon's and things, if the objective standard, by an objective standard, a reasonable consumer wouldn't perceive the request as being required in order to complete the transaction, there's no violation. Well, don't you think the Absher versus AutoZone is a good case for you? Yes, and I was going to say in terms of, and I cited that in saying that that case, in terms of the hyperliteral and hypertechnical application of the comma, placement of the comma, and whether it's request and require that is modified by as a condition to accepting the credit card, that's dead on. And again, the argument that request standing in isolation, that any request in the kind of the situation that Judge Smith identified where you make a payment, you walk around the store for two hours, or maybe even go home, and then give your credit card information, under a hypertechnical reading that Absher rejected, that would be a violation of the statute. And Absher said that can't be the application of the statute, that's an absurd result, and they rejected that out of hand. So what are we to make, this frankly, I thought about this a lot. This statute was passed, what, in 91? 1990. 90, okay. And then there was an amendment in 91 that added the request. So the world is very different than it was in 1991. Before the consumer ever goes in, you know, mega data crunchers have far more information about every person that goes in the store than they could possibly get from asking them about it, out of a credit card transaction. And yet, part of that information comes from the credit card itself. The credit card companies provide this information. What if anything, about the current world electronic situation, should we take into consideration? Is that totally out of bounds, because we have to look at the world as it existed? In other words, is this an originalist interpretation of this statute, or are we looking at the world in which we now live? Well, I think when you're determining the legislature's intent, it's the intent that enacted the statute. I don't think you can blindly interpret the statute and say they never intended this to apply to certain transactions. In Apple, the Supreme Court said that, okay, even though certain aspects of electronic privacy and data didn't exist back in 1990, we don't have to say that that's not something that can possibly apply here. But I think with respect to the issues that this Court is presented with, the legislative intent will govern. And I think the legislative intent is clear. Again, the committee notes and the summary of the legislative history shows that there was never an intention to exclude voluntary exchange of information. That's clear. And then there was an amendment where a request was added to avoid possible in-runs, which is a situation where I'm a cashier, and Judge Callahan is at the register, and I say, hey, can I have your Social Security number, and I'll go ahead and get you rung up here. Technically that's a request. It's not a requirement. But that's a request that a reasonable and an objective standard a consumer could perceive as being required in order to complete the transaction. That's the type of situation that the legislature wanted to close a loophole. It was always the intent of the statute, but the amendment in 1991 addressed that specific issue. And again, it didn't, the amendment in 1991 is repeatedly characterized both by the Supreme Court in Apple, as well as the legislative history of the amendment, to be a non-substantive change. It didn't change the substance. So again, the legislative history as to the original statute, where it specifically says and talks about the voluntary exchange of information, nothing is going to preclude a retailer from requesting information from credit card holders if that information is provided voluntarily. That still applies, regardless of the amendment and the change of request solely to a request and, or require. Remind me what you had to say about that language at the beginning of Pineda, other than just sort of getting at the back of the hand as dicta, because it seems pretty clear to say that the request alone, as long as it's coupled with recording, is a violation. Yeah. I don't find that entirely compelling, Judge Watford. I think that if you read even the single paragraph in Pineda, first I think you have to start with the understanding that Pineda didn't deal with this issue at all. I don't think anyone can argue that Pineda was dealing with whether a request or require is part of the transaction. Pineda dealt with a very narrow issue. Does a zip code without more, and they use that phrase over and over in the Supreme Court opinion of Pineda, a zip code without more meaning a zip code in isolation of the address, does that constitute personal identification information? And if you look at the line that's plucked from Pineda that appellant repeatedly uses, if you look just three or four sentences up from that specific recitation of the issue, the Supreme Court in Pineda identifies the issue and says, does a zip code without more constitute personal identification information? All they're doing is answering that question, saying a zip code without more is a violation of the statute. And if you look through Pineda, repeatedly they use that term without more, and indeed in fact, at one point, they say whether a zip code without more constitutes a violation, and they talk about being in conjunction with the credit card transaction. Yeah, no, I hear you. I'm not trying to suggest that Pineda resolved the issue. If it had, I assume neither of you guys would be here, you'd just be going on. But I guess in terms of the question that Judge Smith asked about whether we should certify, I mean, I confess I'm a little reluctant to just ignore what, albeit maybe out of context, seems like a pretty plain statement of what the California Supreme Court thought the statute meant. And then obviously when we look at the text itself, given the placements of the commas, it's not crazy if the California Supreme Court were to come out the same way that it had in that sentence in Pineda. Why shouldn't we at least say, you know what, let's not be presumptuous. We don't know anything about interpreting California statutes. Maybe we should turn to the experts and let them have a crack at it. Well, I'm out of time, but I will finish and respond to your questions, Judge Wofford. You know, again, the Supreme Court in Pineda didn't deal at all with the issue that's presented here. So I don't think it's presumptuous to say that the Supreme Court didn't address this issue at all. The state appellate courts have squarely addressed the issue of that punctilious use of the comma, and that's Absher and TJX. And they clearly rejected that application. So that makes this panel's job much easier, and I don't think it's a matter of second guessing or being presumptuous as to what the Supreme Court would rule. I think it's just a basic application of the statute to the facts. And, again, all of the district court cases, there's not a real dispute in terms of the courts, the published opinions that have applied the statute. I thank you for your time. Thank you for your argument. Thank you. Yes, thank you, Your Honors. Can I start off by asking you the question I ask your opposing counsel? If we were to conclude that the case law, legislative history, and, of course, the statute itself did not provide us a crystal clear determination of the meaning of the statute, would it be your preference that we nevertheless apply the principles that we have that are in the statute, or would you rather that we certify the question with specificity to the California Supreme Court in the hope that it would accept the referral and make a decision? Your Honor, I believe that it is absolutely proper and appropriate to certify the question to the California Supreme Court, and, in fact, we asked this Court to do such in our briefing. Now, I believe that the California Supreme Court, as well as Flores and Apsher, are absolutely clear as to how they interpreted the 1991 amendment. However, the specific question as to this particular timing of the request hasn't been addressed. However, all three courts, Apsher, Flores, and Panetta, all state that the 1991 amendment prevents the retailer from making an in run around the statute by claiming the customer furnished PII data voluntarily. And the Supreme Court stated that the 1991 amendment broadened the statute. They stated that the legislature that it so expanded the scope of former 1747-08 that it further evidence and intended a broad consumer protection statute. So for this court to adopt an interpretation that narrows the statute, that destroys the purposes of the statute, of the retailer gathering PII from card holders in conjunction with credit card information and tying this information together, it would lead to eviscerating the statute. And if the Supreme Court of California wanted to look at this- In this kind of a case, though, we have a legislature that can clearly amend the statute in any way it wants, and a governor who will cooperate in whatever they do as to this sort of thing. If we or the California Supreme Court were wrong, it could easily be remedied, right? Unlike in Washington. Your Honor, in California, following the Panetta decision in 2011, the Supreme Court did amend the statute to allow gas stations to request zip codes solely for the prevention of credit card fraud. The legislature amended the statute. I'm sorry, the legislature amended the statute in 2011 to allow gas stations to collect zip codes, but solely for the purpose of preventing against credit card fraud and identity theft. Certainly not for marketing purposes. The collection of information for marketing purposes was precisely what- But that happens before the transaction's completed. You slide the card, you put the zip in before you get approved, right? That's correct, Your Honor. It's part of the approval process for entering that zip code in. But nonetheless, a consumer, from their standpoint, at the point of sale, when they're asked for information at the point of sale, it's all part of the same credit card purchase transaction. The transaction does not magically end, and to parse the statute so narrowly with a scalpel to say that it ends the moment the receipt is handed over would be against the Supreme Court's instruction that it must be broadly construed to further the purpose. Unless my colleagues have other questions, we've taken you a minute over, so your time's expired. Thank you for your argument. Thank you very much. This matter will stand submitted. Thank you.
judges: Callahan, Smith, Watford